# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 6, 2018

## STATE OF TENNESSEE v. BRANDON RAMEL COLE-PUGH

### Appeal from the Circuit Court for Madison County
### No. 17-50     Donald H. Allen, Judge

_____

### No. W2017-02402-CCA-R3-CD

_____

A Madison County grand jury indicted the defendant, Brandon Ramel Cole-Pugh, with aggravated burglary and theft of property over $1,000. Following trial, a jury found the defendant guilty of aggravated criminal trespass, a lesser-included offense of aggravated burglary, and theft of property over $1,000, and the trial court imposed an effective sentence of eight years. On appeal, the defendant challenges the sufficiency of the evidence to support his theft of property conviction and requests plain error review of the prosecutor's closing argument. After reviewing the record and considering the applicable law, we modify the defendant's theft conviction from a Class D felony to a Class E felony based on the criminal savings statute and impose a sentence of four years' confinement as a Range II offender. We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Modified in Part; Case Remanded.**

J. ROSS DYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and TIMOTHY L. EASTER, JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Brandon Ramel Cole-Pugh.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Aaron J. Chaplin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Facts and Procedural History

On July 12, 2015, Stan Holmes arrived home from church at approximately noon and began to prepare lunch. He opened the blinds in his dining room and noticed the defendant climbing over the wooden fence into his backyard. Mr. Holmes was immediately suspicious because the defendant was carrying a flat screen TV, so he knocked on the window to get the defendant's attention. The defendant, who was roughly ten feet from Mr. Holmes, waved at him and proceeded to climb back over the fence into the other yard. The entire exchange lasted ten seconds. After the defendant left, Mr. Holmes went outside to investigate and noticed a computer printer with blood on it in the area beside his townhouse. After discovering the printer, Mr. Holmes immediately called the police. Officer Eric Boyd with the Jackson Police Department responded to Mr. Holmes's residence and recovered the printer. He obtained a swab of the blood for analysis and placed the printer in his trunk. Mr. Holmes denied describing the suspect as fifteen to sixteen years old when speaking with Officer Boyd, even though the initial police report included this description.

Approximately two hours later, Kaley Humphrey, who lived on the same street as Mr. Holmes, arrived home from church and discovered her back door was kicked in. Her home was in disarray and several items were missing, including a flat screen TV, VCR, DVD player, printer, two laptops, wireless router, cooling pad, speakers, MP3 player, jewelry, jewelry box, duffle bag, and wicker basket. She later submitted a claim to her insurance company valuing these items at $1,765. In her spare bedroom, Ms. Humphrey saw spots of blood on the carpet. Officer Boyd was notified of the burglary by dispatch and drove to the victim's home, where she identified the printer found by Mr. Holmes as the one stolen from her home that morning. Except for the printer, the victim did not recover any of the stolen property.

Investigator Joseph Williams with the Jackson Police Department was assigned to the case in May 2016, after receiving the TBI's report, which indicated the DNA found on the printer matched the defendant. Investigator Williams obtained an arrest warrant and received a DNA sample from the defendant to submit for comparison. Investigator Williams also contacted Mr. Holmes, who described the person he had seen as a juvenile, approximately seventeen years old. Mr. Holmes did not identify any distinctive marks or features on the person, even though, at trial, he conceded the defendant has tattoos on his arms and face. Investigator Williams conceded the blood found in the victim's home should have been swabbed and tested for DNA.

Special Agent Christie Smith, a forensic scientist with the TBI, analyzed the initial sample taken from the printer in 2015. She was able to generate a full DNA profile, which she ran through the FBI's Combined DNA Index System ("CODIS"), obtaining a

match to the defendant. Agent Smith requested a DNA sample directly from the defendant for comparison, and matched it to the DNA profile obtained from the blood on the printer. Agent Smith described the probability of randomly selecting an unrelated person with the same DNA as "one in a number greater than the current world population."

Following deliberations, the jury found the defendant guilty of the lesser-included offense of aggravated criminal trespass, a Class A misdemeanor, and theft of property over $1,000, a Class D felony. The trial court subsequently sentenced the defendant to an effective sentence of eight years. The defendant filed a motion for a new trial in which he argued, in part, the evidence was insufficient to support his convictions and the State's closing argument was improper. The trial court denied the motion, and this timely appeal followed.

## *Analysis*

## I.  Sufficiency

On appeal, the defendant first argues the evidence was insufficient to support his conviction for theft of property over $1,000.[1] The State counters that the evidence was sufficient. Following our consideration of the arguments of the parties, the record, and pertinent case law, we agree with the State.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

---

[1] The defendant does not challenge his conviction for aggravated criminal trespass.

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Theft of property valued at $1,000 or more but less than $10,000 is a Class D felony. Tenn. Code Ann. § 39-14-105(a)(3).

The defendant argues he can only be linked to the printer because the other missing items were not found in his possession and the State did not provide any evidence that he sold the items. Viewed in the light most favorable to the State, the victim testified she returned home from church to find her back door kicked in, her home ransacked, blood on her carpet, and multiple items missing, including a flat screen TV and printer. She filed an insurance claim listing the total value of the stolen items at $1,765. That same morning, Mr. Holmes, the victim's neighbor, saw the defendant climbing over his fence with a flat screen TV is his hands. Mr. Holmes went outside and discovered a printer, which the victim later identified as the one stolen from her home, with blood on it near his fence. The blood on the printer was a match to the defendant's DNA. Based on the evidence, a rational jury could find theft of property over $1,000 beyond a reasonable doubt.

The defendant also argues Mr. Holmes's initial description was inconsistent with the defendant's appearance. Mr. Holmes testified he never described the suspect to Officer Boyd as fifteen or sixteen years old. He may have described the suspect to Investigator Williams as a juvenile, approximately seventeen years old. Mr. Holmes did not tell Investigator Williams about distinctive tattoos or markings on the suspect because he could not recall whether any were present at that time. However, at trial, Mr. Holmes unequivocally identified the defendant as the person he saw climbing his fence on that date. *See State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) ("Inconsistency,

inaccuracy and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given the testimony."). The defendant is not entitled to relief on this issue.

While not raised by either party, as a matter of plain error, we also conclude the defendant's conviction for theft should be modified from a Class D felony to a Class E felony. We, therefore, remand the matter to the trial court for the entry of a new judgment and, based on our review of the trial court's findings during the sentencing hearing, imposition of a sentence of four years.

"When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b); *see also* Tenn. R. App. P. 13(b) (stating that the appellate court may in its discretion consider other issues not raised on appeal to prevent prejudice in the judicial process, among other reasons).

On April 27, 2016, the governor signed into law a bill designated by the legislature as the Public Safety Act of 2016 ("the Act"). Among many things, the Act amends Code section 39-14-105 by modifying the grading of theft offenses. *See* 2016 Pub. Acts, c. 906. As is relevant to this case, the Act provides:

> Tennessee Code Annotated, Section 39-14-105(a), is amended by deleting the subsection in its entirety and substituting instead the following language:
> (a) Theft of property or services is:
> …
> (2) A Class E felony if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500);
> (3) A Class D felony if the value of the property or services obtained is two thousand five hundred dollars ($2,500) or more but less than ten thousand dollars ($10,000)[.]

2016 Pub. Acts, c. 906, § 5. The Act provides for an effective date of January 1, 2017.

Here, the defendant stole over $1000 but less than $2500 worth of property from the victim. While at the time of the defendant's crime and indictment his actions amounted to a charge and conviction of a Class D felony for theft, by the time of the defendant's sentencing hearing, the Act had taken effect, and therefore, the defendant's

actions constituted a Class E felony for theft. "When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense." Tenn. Code Ann. § 39-11-112. Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act. *Id.*

According to the proof presented at trial, the property taken from the victim was valued between $1000 and $2000. As such, the *punishment* applicable to the defendant's theft conviction was reduced from a Class D felony to a Class E felony under the amended theft statute. Tenn. Code Ann. § 39-14-105 (a)(2). Though the defendant committed the theft before the legislature amended the theft statute, because the amended theft statute provided for a "lesser penalty," the criminal saving's statute applies to the defendant's conviction. Tenn. Code Ann. § 39-11-112. Accordingly, we modify the defendant's convictions for theft from a Class D felony to a Class E felony. And, based upon our review of the trial court's findings during the sentencing hearing, impose a sentence of four years' confinement as a Range II offender, and remand the matter to the trial court for entry of a new judgment consistent with this opinion.

## II.    Improper Closing Argument

Next, the defendant contends the State's closing argument constituted misconduct, depriving the defendant of his right to a fair trial. The defendant acknowledges he failed to contemporaneously object to the argument and requests review under the plain error doctrine. The State maintains the defendant is not entitled to relief under the plain error doctrine because he cannot show that a clear and unequivocal rule of law was breached, one of his substantial rights was adversely affected, or substantial justice requires consideration of any error. We agree with the State.

During rebuttal closing argument, the prosecutor made the following statements:

Any other verdict in this case, you'll be letting [the defendant], which the proof has shown he's a guilty man in this case, go free. And that proof, you'll be letting him go free not -- this is what the [d]efense wants you to do, not because that the evidence didn't show he committed the crime, because that's not what they're saying, but because law enforcement didn't do everything they should have done that day. That's not Ms. Humphrey's, the victim in this case, fault. And the proof still shows that he did commit, so I ask you to convict the [d]efendant based on the proof that you heard.

Before an error may be recognized, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). In *State v. Smith*, our Supreme Court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

> (a) The record must clearly establish what occurred in the trial court;
>
> (b) A clear and unequivocal rule of law must have been breached;
>
> (c) A substantial right of the accused must have been adversely affected;
>
> (d) The accused did not waive the issue for tactical reasons; and
>
> (e) Consideration of the error is "necessary to do substantial justice."

24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283.

The established test for determining whether prosecutorial error based on improper comments amounts to reversible error is whether the conduct was so improper, or the argument so inflammatory, that it affected the verdict. *See State v. Reid*, 164 S.W.3d 286, 344 (Tenn. 2005); *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). In assessing whether comments made by the prosecution are so inflammatory or improper as to affect the verdict, the court must consider five factors:

> (1) The conduct complained of viewed in the context and the light of the facts and circumstances of the case;
>
> (2) The curative measures undertaken by the court and the prosecution;
>
> (3) The intent of the prosecutor in making the improper statements;
>
> (4) The cumulative effect of the improper alleged conduct and any other errors in the record; and

(5) The relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); see also *Goltz*, 111 S.W.3d at 5-6.

The defendant argues the prosecutor's statements were inflammatory and used only to appeal to the jury's fear of the consequences if they returned an acquittal. In light of the proof presented by the State, any potentially prejudicial effect is outweighed by the evidence in this case. The State provided both eyewitness testimony and DNA evidence linking the defendant to the crime. Moreover, the trial court instructed the jury to follow the law, not the opinions of the attorneys, and we presume the jury followed those instructions. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). Finally, although the defendant argues the prosecutor's statements deprived him of his right to a fair trial, he has failed to cite to authority that indicates how the statement infringes upon a substantial right. *State v. Armstrong*, 256 S.W.3d 243, 249 (Tenn. Crim. App. 2008). Accordingly, we modify the defendant's theft conviction from a Class D felony to a Class E felony. Also, upon review of the trial court's findings during the sentencing hearing, we impose a sentence of four years' confinement as a Range II offender, and remand the matter to the trial court for entry of a new judgment consistent with this opinion.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE